State, Kean, pros., v. City of Elizabeth.

THE STATE, JOHN KEAN, PROSECUTOR, v. THE CITY OF ELIZABETH.

1. Section one hundred and twenty-three, in the charter of Elizabeth, of 1863, which directs that all contracts for doing work, or furnishing materials for public works, exceeding $100 in amount, shall be advertised and given to the lowest bidder, is inconsistent with a resolution of the common council to use the Stow foundation pavement, and advertising for proposals for the same, because it is patented, and one firm has the exclusive right to use it in the city.

2. The supplement of February 9th, 1870, regulating the awarding of contracts for public improvements, where the use of any patented process or materials is contemplated in paving a street, requires the consent of the owners of one-half of the property in running feet, along the line of the intended improvement.

3. The resolution to pave with such patented pavement, and the proceedings under it to award a contract to the only bidder, are void, because such consent does not appear.

On *certiorari*.

The facts of this case are as follows:

The city council of Elizabeth, at a meeting held June 5th, 1871, passed the following resolution:

" *Resolved*, That it is the intention of the city council of the city of Elizabeth, under and by virtue of the provisions of an act entitled ' An act to revise and amend the charter of the city of Elizabeth,' approved March 4th, 1863, to order and cause Morris avenue, from Broad street to the city line, to be regulated, graded and paved with *Stow foundation pavement*, and the street commissioner is hereby directed to give public notice in the *Elizabeth Daily Herald*, a newspaper printed, published and circulating in this city, of the intention of the city council to order and cause such improvement to be made, requesting such persons as may object thereto to present their objections at the street commissioner's office, on or before the expiration of two weeks from the date of such notice."

June 26th, 1871, the street commissioner reported that notice had been given, and no objections filed in his office.

Objections had been presented by several of the property-owners, to the city council, May 22d, 1871. The report of the street commissioner, and the objections and remonstrances were referred to the committee on streets and highways. At a meeting of the city council, held July 1st, 1871, the ordinance entitled "An ordinance to pave Morris avenue from the track of the Central Railroad Company of New Jersey to the city line, with *Stow foundation pavement,*" was taken up, passed to a second reading and ordered to be published. The legal question relating to assessments for repairing the said street, and the remonstrances against the same, were referred to the city attorney. July 18th, 1871, the ordinance was taken up on the third reading, and laid on the table. At a meeting held July 25th, 1871, a petition for said contemplated improvement was presented, and referred to the committee on streets and highways. It is claimed that this petition is signed by the owners of more than one-half of the property in running feet, along the line of the intended improvement, and it was so certified by the city surveyor.

At the same meeting the opinion of the city attorney was received and filed. The ordinance was again taken up, and laid on the table.

August 1st, 1871, another petition was presented by some owners of property on the line of Morris avenue for the improvement.

August 14th, 1871, the ordinance was taken up and lost. The vote was reconsidered, and it was again laid on the table.

September 1st, 1871, the ordinance was read a third time, and passed by a vote of nine in the affirmative to six in the negative. The ordinance is as follows:

"SEC. 1. That Morris avenue, from the track of the Central Railroad Company of New Jersey to the city line, should be paved with Stow foundation pavement.

"SEC. 2. That the whole amount of costs and expenses incurred in the prosecution and completion of said improvement, should be duly assessed, according to the provisions of the act

entitled 'An act to revise and amend the charter of the city of Elizabeth,' approved March 3d, 1863.

"SEC. 3. Said improvement shall be made and completed under the supervision and direction of the street commissioner, and according to the provisions of the city charter and ordinances."

This ordinance was approved by the Mayor, September 6th, 1871.

At the meeting of September 1st, the street commissioner was ordered to advertise for proposals for paving Morris avenue. September 26th, 1871, sealed proposals from John Bryan & Co., for paving said avenue, from the Central railroad to the city line, for $54,560, were received, and it was resolved that they, being the lowest bidders, the mayor issue a contract for doing the work, on the part of the city, according to the proposal.

Pending the action on this resolution, a remonstrance was presented against paving the avenue with wooden pavement, suggesting that the present pavement could be repaired at a small expense, and objecting to the burden put on their property by re-paving with an expensive wooden pavement.

The proposals were in the usual form under the charter and ordinances, and were sworn to by James S. Green, one of the firm of John Bryan & Co.

A bond was also presented in the penal sum of $14,000, signed by John Bryan & Co., of New York, James S. Green, and Jacob C Winans, of the city of Elizabeth, with conditions to enter into a contract for faithful performance, and to perform the work in a good and workmanlike manner, according to the terms of contract, and satisfactory to the council or their officers, &c. October 16th, 1871, the mayor returned the contract to council, without signing it, with his reason, that a *certiorari* had been applied for and allowed, on behalf of some of the owners of land on Morris avenue.

It is admitted that the *Stow foundation pavement* is a patented article, and that John Bryan & Co. have the sole and exclusive right to use the same in the city of Elizabeth.

VOL. VI.                        Y

The *certiorari* brings up all the proceedings of council, the proposal, bond, and the contract prepared for approval by the mayor.

Argued before Justices BEDLE, DALRIMPLE and SCUDDER.

For prosecutor, *J. R. English* and *B. Williamson*.

For defendant, *R. S. Green* and *C. Parker*.

SCUDDER, J.    It will be observed, by reading the state of facts in this case, that the contemplated improvement was the re-paving of Morris avenue from the track of the Central Railroad of New Jersey to the city line, with the *Stow foundation pavement,* a patented article, which only John Bryan & Co. could lay in the city of Elizabeth.    It is, therefore, first important to determine the question—which was fully discussed on the argument—whether section one hundred and twenty-three of the charter of 1863, which directs that all contracts for doing work, or furnishing materials for any improvement under the act, exceeding in amount $100, shall be advertised, and *shall, at all times, be given to the lowest bidder* —he or they giving ample and satisfactory security for the same, according to the contract—excludes a patented article, where there is an exclusive right to use it within the proposed territory, because there can be but one bid.

This section of the statute contemplates the public advantage of an open, free competition in doing work, and furnishing materials for all public improvements, which is inconsistent with the exclusive right to sell a patented article previously selected, and alone acceptable.

This question has been discussed and adjudicated in other states—not always alike, or without dissent, as may be seen by referring to *Hobart* v. *City of Detroit,* 7 *Am. L. R.* 741 ; *Den* v. *Charlton, Ib.* 564, ( *Wis. Rep. ;*) *Astor* v. *City of New*

*York, Sup. Ct., Gen. Term, Feb.,* 1869; *Harlem Gas Light Co.* v. *New York,* 33 *N. Y.* 309.

In the case of *John Coar et al.* v. *Jersey City,* at the present term of this court, it is decided that, where the resolution of the city council was to pave with Nicolson pavement (that being a patented pavement, and the right to use it in Jersey City exclusively held by the only bidder for the work, there was not, and could not be, any competition within the intent of the charter, and for that reason the resolution and proceedings, awarding the contract to such bidder, should be set aside.

It requires considerable ingenuity to avoid such a reasonable conclusion from such plain and direct statutory requirement. No one can compete, on equal terms, with a man who controls the sale of the thing needed. Bidding, under such a condition, is but a form, and the result must be almost necessarily deceptive and injurious to persons who are to be assessed for payment. There can hardly be a lowest bidder, within the intent of the charter, where there can be, in reality, but one bid. This question does not appear to have been considered in *State* v. *Ayres,* June Term, 1871, for the reason, probably, that there are other provisions in the charters of many of our cities, taking patented processes out of the operation of a similar section. The policy of such exception is not within our province to determine, after legislative authority is given, but I must give a hearty approval of the expression used by Judge Campbell in the Detroit case, when he says: " I can conceive no more fruitful source of possible inducements to corruption than the monopoly of paving the streets of a large city."

There are supplements in this charter which modify, explain, and except, from this section one hundred and twenty-three. Thus, in the supplement of April 5th, 1865, section four, this section one hundred and twenty-three is amended by adding, " Provided, that the city council may reject any or all bids, if they deem it best for the interest of the city to do so." Also, in section nine of supplement of April 1st, 1869, assess-

ments for paving and flagging shall not be void by reason of letters patent for the same, or because there is but one bid for the contract to do said work.

Again, February 9th, 1870, a further supplement was passed, regulating the awarding of contracts for improvements *where the use of any patented process or materials is contemplated.*

This case is, therefore, narrowed by legislative action to the construction and application, mainly, of this last supplement. It enacts, in substance, that whenever the city council of the said city shall determine to cause such improvements, if the owners of one-half of the property in running feet along the line of the intended improvement shall remonstrate in writing against the use of any specified patent, or petition for the use of any specified patent, the contract shall be awarded only in accordance with the request of such proportion of owners. Section two makes it obligatory on the mayor .to ascertain that this proportion is secured before the contract is awarded or rejected, and binds the council, on his return of the contract for this cause, to reconsider their action, and to award the contract in accordance with the provisions of that act.

In this case, there is a petition for, and a remonstrance against, the specified patent. Do either show a majority of running feet on the part of the avenue to be improved? This question of fact must be settled. The city surveyor certifies at the bottom of the petition presented by some of the property-owners on the avenue, July 25th, 1871, that the names subscribed represent more than a majority of feet-front on Morris avenue. This certificate, and the action of the council upon it, although in good faith, do not prevent this court from looking into and deciding this point. Ample power is given us by the act relative to the writ of *certiorari*, April 6th, 1871, to determine disputed questions of fact, as well as law.

The total number of running feet to be improved is six thousand and forty-nine; one-half is three thousand and twenty-four and a half. The whole number of feet represented in the petition presented to the city council for the

stone foundation pavement is four thousand two hundred and ninety-six and five-sixths.

It is admitted that there are some errors in these particulars; there are others which we will determine. John Riley signed three hundred and ninety-five feet, while his correct number is three hundred feet—excess, ninety-five feet. Brazilla Ayres signed fifty feet, when he owned but thirty-two feet; the difference is eighteen feet. Moses Parcell signed both petitions—one should be deducted—one hundred and ninety-five feet. John O. Magie signed for the Morris Avenue School Association, without authority from the board of trustees, fifty feet. David Richardson, John B. Norton, and Charles Schroder signed for their wives, respectively. Where land belongs to a married woman, she should sign, and the husband cannot sign for her. She is owner, and he cannot create a lien on her estate by his petition for an improvement of her land, which, when made, becomes a charge against it. This principle was decided in a case under our mechanics' lien law. *Johnson* v. *Parker*, 2 *Dutcher* 239. What was thus signed, must be deducted one hundred and fifty feet. Nehemiah B. Sayre and Philip A. Dougherty signed for a consideration. Both say they would not have signed without it. Robert W. Southmayd, who was in the office of the Stone Foundation Pavement Company, and in some way interested with them, agreed to fill up their lots, lying near the improvement, with dirt, if they would sign. Such purchased consent is against the policy of the law, and unjust to the other property-owners. The fair judgment of the owners, and not their cupidity, must determine the question whether they and others shall be assessed. A promissory note given by the applicants for a public road to a caveator against the road to buy off his opposition and secure his assent to it, is void. *Smith* v. *Applegate*, 3 *Zab.* 352. It is no less obnoxious to the same rule of public policy and private right, that an owner of a patent right, or his employee or agent, should, by compensation and favor shown to one person interested, secure his aid to impose a burden upon others and upon the public, under the provis-

ions of this charter.   It is not only silencing probable opposition, but securing efficient aid against others.

The number of feet signed under such influences must therefore be deducted, (four hundred and one feet.)   Before the contract was awarded, Jacob Franty John Riley, William Stiles, Daniel H. Noe, J. E. Buzby, and Joseph M. Lewis signed a remonstrance against any wooden pavement, and thereby withdrew their assent to the petition.   I think they had the right to take their names from the petition by this method, at any time before the city council had become bound by a contract made in accordance with their request; especially as there is some evidence that the probable cost of the proposed pavement was understated by those interested, to procure their former consent.   These persons represent six hundred and ten and a half feet.   The aggregate of deductions is fifteen hundred and nineteen and a half feet; the total number signing, four thousand two hundred and ninety-six and five-sixths, leaving a balance of two thousand seven hundred and seventy-seven and one-third feet.   This is less than three thousand and twenty-four feet, one-half of the whole number of running feet along the line of the improvement.   The remonstrance is signed by property-owners representing two thousand seven hundred and fourteen and one-half feet.   This is also short of the required one-half. By this result, it appears that there was neither a sufficient petition or remonstrance.   The section is confused, and at first reading it might seem that, in case there was neither petition or remonstrance, the common council, having determined to cause the improvement to be made which should contemplate the use of a patented process or materials, if they, the owners, did not interpose a petition for, or remonstrance against, some specified patent, could go on to use such as they themselves might choose.   But the last clause of the section settles the construction differently.   It reads thus:  "The said city council shall award the contract for the said work only in accordance with the request of such proportion."   The term, "said work," in this clause, and "such work," in the

State, Central Railroad of New Jersey, pros., v. City of Elizabeth.

second section, refer to all the work contemplated in the first section, and apply to the use of any patent process or materials. This is reasonable and just. It gives the property-owners the control of such improvements as employ patented processes where there can be no competition, and is a restraint upon experiments and speculations undertaken at the expense and risk of those who are often overburdened by such assessments.

The resolution of the city council of Elizabeth, awarding this contract for paving Morris avenue with Stow foundation pavement, was in excess of their authority, and all proceedings under it are null and void. This conclusion makes it unnecessary to decide the other points discussed on the argument.

Justices BEDLE and DALRIMPLE concurred.